UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

PAUL WAYNE BAGLEY, #1585475,

              Petitioner,

v.                                    ACTION NO. 2:23cv210

CHADWICK DOTSON,
Director of Virginia
Department of Corrections,

              Respondent.

## UNITED STATES MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

Petitioner Paul Wayne Bagley ("Bagley"), a Virginia inmate, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction for rape, forcible sodomy, carnal knowledge of a minor, three counts of indecent liberties, and two counts of animate object sexual penetration in the Circuit Court for Prince Edward County in 2015. ECF No. 1, at 1–2.

Respondent, Chadwick Dotson, Director of the Virginia Department of Corrections ("respondent") moved to dismiss Bagley's petition. ECF No. 16. This matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia. The Court recommends that respondent's motion to dismiss (ECF No. 16) be **GRANTED** and the petition for writ of habeas corpus (ECF No. 1) be **DENIED** and **DISMISSED WITH PREJUDICE.**

## I.   STATEMENT OF THE CASE

In his pro se petition, Bagley alleges his federal rights were violated when he was convicted following a jury trial for rape, forcible sodomy, carnal knowledge of a minor, three counts of indecent liberties, and two counts of animate object sexual penetration in the Circuit Court for Prince Edward County in 2015.  ECF No. 1, at 1–2; ECF No. 18-1.  On September 15, 2016, Bagley was sentenced to serve 421 years of incarceration and pay a $100,000.00 fine.  ECF No. 18-1.

Bagley appealed his convictions to the Court of Appeals of Virginia, which affirmed the trial court's convictions in an unpublished decision dated October 23, 2018.  ECF No. 18-7; *see Bagley v. Commonwealth*, Record No. 1803-17-2, 2018 WL 5259215 (Va. App. Oct. 23, 2018).  The Court of Appeals summarized the trial evidence as follows:

> J., the victim in the present case, was born on January 15, 1992.  When J. was three years old, Bagley began living with her family.  Bagley and J.'s mother had a long-term romantic relationship, and Bagley essentially acted as J.'s stepfather even though he was not married to her mother.  Bagley was the only "father figure" in J.'s life, and she called him "daddy."  Bagley frequently supervised J. while her mother worked.
>
> In 2004, when J. was in the sixth grade, Bagley put his fingers and tongue inside of J.'s vagina.  Bagley stopped the sexual activity when J. started crying.  He told her that she could tell her mother about what had occurred, but warned her about the consequences of doing so.  Specifically, Bagley told J., "You can call your mom if you want but if you call her and you tell her, she'll probably break up with me or your granddad won't like it and he'll take care of me, or I'll end in jail, and . . . I won't be here for you anymore."  J. did not tell anyone about sexual abuse for nine years.
>
> Bagley continued to sexually abuse J. following the initial 2004 incident.  Bagley put his fingers inside of J.'s vagina every "couple of months" after the initial abuse.  Approximately two years later, when J. was in the eighth grade, Bagley had vaginal sexual intercourse with her for the first time.  At some point, J. started performing fellatio on Bagley.  Later, they also had anal intercourse.  Bagley's sexual abuse became more frequent as time passed.  Bagley began to abuse J. "every month or so," and eventually, he abused her "about every two days."

When J. was seventeen years old, she became pregnant with Bagley's child. In 2010, J. gave birth to a full-term baby when she was eighteen years and three months old. Bagley impregnated J. again shortly after the birth of their first child, and J. gave birth to their second child in 2011. J. initially concealed the fact that Bagley was the father of her children from her family and friends.

In August of 2013, J. told her mother that Bagley had been sexually abusing her. She then reported Bagley's conduct to the police. J. told the police that she never consented to any sexual activity with Bagley. J. explained that Bagley made her "feel bad" if she did not have sex with him. J. also told the police that she was afraid that Bagley would tell her mother about their previous sexual activities if she did not have sex with him, and thereby destroy her family. Notably, J. also told the police that Bagley had sexual intercourse with her for the first time in 2004 and that he had sexual intercourse with her seven more times that year. J. obtained a protective order against Bagley based on her allegations.

Despite the issuance of the protective order, J. and her children moved in with Bagley after she made her initial report to the police. During the time when she lived with Bagley, J. displayed affection for him when they were in public, and she told her friends that they planned to get married. She also sent pornographic images of herself to Bagley.

At Bagley's trial, J. testified about her sexual abuse. Her prior written statement to the police was also admitted into evidence without objection. J. acknowledged that her statement to the police pertaining to the first time that Bagley had sexual intercourse with her was false, and she clarified that she began having sexual intercourse with Bagley when she was in the eighth grade. J. also admitted that Bagley did not use force or threaten her with physical harm in order to coerce her to perform sexual acts. J. testified, however, that she never consented to any of the sexual conduct that she engaged in with Bagley and that she was afraid of him. J. testified that Bagley manipulated her to the point "where [she] did anything he wanted to please him."

J. explained that she did not promptly report Bagley's sexual abuse because she was "afraid that it was going to break up [her] family." J. also addressed why she lived with Bagley after she reported the sexual abuse to the police. J. explained that her children needed a place to live and that she feared Bagley would have attempted to obtain custody of the children if she did not live with him. J. was afraid that Bagley would sexually abuse their daughter if he obtained custody of her.

In addition to J.'s testimony, the Commonwealth presented testimony from one of J.'s friends regarding a conversation that she had with Bagley around the time when J. reported the sexual abuse to the police. On August 14, 2013, Bagley called J.'s friend to ask her if she had recently talked to J. Bagley told the friend that he and J. "were in love" and that "[t]hey had two kids together." Bagley then told the

friend that he and J. had been in a "relationship" since she was eleven years old.

ECF No. 18-7, at 2–4; *Bagley*, 2018 WL 5259215, at *1–2. The Supreme Court of Virginia then refused Bagley's petition for appeal on October 15, 2021, ECF No. 18-3, and denied Bagley's petition for rehearing on November 22, 2021, ECF No. 18-4.

On or around May 9, 2022, Bagley filed a pro se petition for a writ of habeas corpus in the Supreme Court of Virginia, asserting violations of his constitutional rights under the Fifth, Sixth, and Fourteenth Amendments. ECF No. 1, at 16–38; *see* ECF No. 18-14, at 1. The Supreme Court of Virginia dismissed the habeas petition by order entered March 29, 2023. ECF No. 18-14. Addressing Bagley's Fifth and Fourteenth Amendment claims, as well as his claim that the evidence was insufficient to convict him of anything other than "statutory rape," the Supreme Court of Virginia found that these claims were barred as non-jurisdictional issues that "could have been raised at trial and on direct appeal or were raised and decided in the trial court and on direct appeal from the criminal convictions. Thus, they are not cognizable in a petition for a writ of habeas corpus." *Id.* at 2–3. In regard to Bagley's Sixth Amendment ineffective assistance of counsel claims, the Supreme Court of Virginia held that the claims satisfy "neither the 'performance' nor the 'prejudice' prong of the two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984)," and that "petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different." *Id.* at 1–2, 4–11.

On May 15, 2023, Bagley timely filed his federal petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, alleging the following grounds for relief:

(1)     Bagley's Fifth and Fourteenth Amendment rights were violated when he was convicted of "Multiplicity of Indictments," and "when his indictments lacked the revision of a grand jury for approval."

4

(2)     Bagley's Fourteenth Amendment rights were violated when he was unable to "'call' upon certain witnesses for his defense due to counsel's deficiency."

(3)     Bagley's Fourteenth Amendment rights were violated because:

    (a)     there was insufficient evidence to prove force, and

    (b)     there was insufficient evidence to establish guilt because J.'s testimony was inconsistent and contradictory.

(4)     Bagley's Sixth Amendment rights were violated when he was not afforded effective assistance of counsel at trial.

    (a)     Counsel failed to challenge the indictments as multiplicitous, failed to ensure that the charges were first approved by a grand jury, and/or failed to move for the dismissal thereof so that the objection would be preserved for future review.

    (b)     Counsel failed to challenge the overall evidence as insufficient and failed to request evidence, "[s]uch as pictures and text messages that would prove the alleged victim's allegations to be lies," that would have been beneficial to the defense.

    (c)     Counsel failed to advise Bagley about the existing plea offer, instead rejecting it without Bagley's knowledge or consent. Additionally, counsel did not allow Bagley to testify and did not ask questions that Bagley knew would reveal the truth.

(5)     The Supreme Court of Virginia's order dismissing the state habeas petition was "both erroneous and contradictive."

ECF No. 1, at 44–49.

On November 30, 2023, respondent filed a Rule 5 answer and a motion to dismiss the petition with a memorandum in support. ECF Nos. 16–18. Bagley has not responded and the time to respond has expired. ECF No. 20.

These matters are now ripe for decision.

5

## II.   ANALYSIS

**A.   Bagley's petition is procedurally defaulted as to grounds 1, 2, and 3(a).**

Before addressing Bagley's claims, the Court must determine whether he exhausted his remedies in state court, *see* 28 U.S.C. § 2254(b), and determine if such claims were procedurally defaulted in state court. *See Fisher v. Angelone*, 163 F.3d 835, 844, 851 (4th Cir. 1998). A federal court cannot grant a writ of habeas corpus to a person in custody pursuant to a state court judgment unless that person "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The exhaustion doctrine ensures that state courts have a meaningful opportunity to consider claims alleging constitutional violations before those claims are presented to a federal court. *Rose v. Lundy*, 455 U.S. 509, 515 (1982). To be exhausted, a claim must have been fairly presented to the highest state court, with the relevant operative facts and legal theories provided. *Pruett v. Thompson*, 771 F. Supp. 1428, 1436 (E.D. Va. 1991). Fair presentation means that a petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Fair presentation does not require that the highest state court decide a properly presented issue, just that it be given the opportunity to do so. *See Baker v. Corcoran*, 220 F.3d 276, 291 (4th Cir. 2000).

Grounds 1–4 were presented to the Supreme Court of Virginia in Bagley's state habeas petition. Thus, each of those grounds have been exhausted. However, if Bagley's claims were procedurally defaulted, that would also serve as a bar to federal habeas review.

Before finding a procedural default, it must be "clear" that the pertinent claims are now procedurally barred based upon a state law providing an independent and adequate ground for dismissal. *Gray v. Netherland*, 518 U.S. 152, 161 (1996). A state procedural rule is adequate if it

6

is "regularly or consistently applied by the state courts." *McNeill v. Polk*, 476 F.3d 206, 211 (4th Cir. 2007) (citing *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988)). A state procedural rule is independent "if it does not depend on a federal constitutional ruling." *Id.* (citing *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985)). Stated differently, "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)).

Grounds 1 and 2 are barred from federal review because Bagley raised the claims for the first time in his petition for a writ of habeas corpus in the Supreme Court of Virginia, and the claims were denied based on the holding in *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974). Ground 3(a) is barred from federal review because Bagley raised the claim on direct appeal, and the claim was denied based on Rule 5A:18 of the Rules of the Supreme Court of Virginia.

    **1.**    **Bagley's Fifth and Fourteenth Amendment claims in grounds 1 and 2 for: (1) being convicted of "multiplicity of indictments"; (2) "his indictments lacking the revision of a grand jury for approval"; and (3) being unable to "call" upon certain witnesses for his defense, were raised for the first time in his petition for a writ of habeas corpus to the Supreme Court of Virginia, and were dismissed based on the procedural default rule established in *Slayton v. Parrigan*.**

In grounds 1 and 2, Bagley alleges that his Fifth and Fourteenth Amendment rights were violated when he was convicted of "multiplicity of indictments," "when his indictments lacked the revision of a grand jury for approval," and when he was unable to "'call' upon certain witnesses for his defense due to counsel's deficiency." ECF No. 1, at 45–46. The Supreme Court of Virginia denied Bagley's petition for a writ of habeas corpus filed May 9, 2022, partly on procedural grounds. The court denied grounds one and two based, in part, on *Slayton v. Parrigan*, 205 S.E.2d

7

at 682 (holding "[a] prisoner is not entitled to use habeas corpus to circumvent the trial and appellate processes for an inquiry into an alleged non-jurisdictional defect of a judgment of conviction."). ECF No. 18-14, at 2–4.

Bagley's claims in grounds 1 and 2 were each raised for the first time in his state habeas petition and were procedurally barred by *Slayton v. Parrigan*. In *Slayton*, the Supreme Court of Virginia held that, because "the original function of the writ of habeas corpus was to provide an inquiry into jurisdictional defects," when a prisoner was "afforded a fair and full opportunity to raise" a non-jurisdictional issue on direct appeal, such an issue is not cognizable on a petition for a writ of habeas corpus. 205 S.E.2d at 682. In short, "[a] petition for a writ of habeas corpus may not be employed as a substitute for an appeal or a writ of error." *Id.* The Fourth Circuit has repeatedly held that the procedural default rule announced in *Slayton* constitutes an adequate and independent state law ground for decision. *Fisher*, 163 F.3d at 844; *Mu'Min v. Pruett*, 125 F.3d 192, 196 (4th Cir. 1997).

Accordingly, the first two grounds of Bagley's federal petition are procedurally defaulted.

**2. Ground 3(a), "insufficient evidence" to prove "force," raised in Bagley's direct appeal, was dismissed due to Bagley's failure to comply with Rule 5A:18 of the Rules of the Supreme Court of Virginia.**

In ground 3(a) of his federal petition, Bagley contends that his Fourteenth Amendment rights were violated "when he was convicted on 'insufficient evidence,'" challenging the sufficiency of the evidence because "[t]here was no force" and Bagley should only have been found guilty of statutory rape. ECF No. 1, at 34, 47. That claim was presented on Bagley's direct appeal and was dismissed based on a state procedural rule. ECF No. 18-7, at 5–7.

At trial, Bagley made a motion to strike at the conclusion of the Commonwealth's case-in-chief arguing, in part, that the evidence presented failed to establish that Bagley coerced J. to

8

perform sexual acts through the use of force. *Commonwealth v. Bagley*, No. CR14000744–47, 49, 51–53, at 119–21 (Va. Cir. Ct. Aug. 19, 2015) ("Trial Tr."). After Bagley presented evidence on his own behalf, he made a renewed motion to strike, but did not argue in his renewed motion that the evidence was insufficient to establish that he coerced J. to engage in sexual activity through force. *Id.* at 157–60.

On appeal, the Court of Appeals of Virginia ruled that "[b]y failing to present this argument in his renewed motion to strike, Bagley has waived his appellate argument based on these grounds." *Id.* at 7; *see* Va. Sup. Ct. Rule 5A:18 (stating that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice."). The state court's reliance on Rule 5A:18 to dismiss Bagley's claims is an adequate and independent state procedural rule, which bars federal review of the claims. *See Kent v. Kuplinski*, 702 F. App'x 167, 169 (4th Cir. 2017) (holding that Rule 5A:18, which applies to the Court of Appeals of Virginia, is virtually identical to Supreme Court of Virginia Rule 5:25, and because Rule 5:25 constitutes an independent and adequate state procedural bar precluding habeas review of errors not raised at trial, Rule 5A:18 precludes such review, as well). The Supreme Court of Virginia refused both the petition for appeal and petition for rehearing. ECF No. 18-13, at 162, 178. Thus, Bagley's claim that was raised in his direct appeal of his conviction is procedurally defaulted.

Therefore, Bagley's petition is procedurally defaulted as to ground one, ground two, and the relevant portion of ground three because the claims were raised either before the Supreme Court of Virginia or the Court of Appeals of Virginia and denied based on an adequate and independent state procedural rule.

9

### 3. No cause exists to excuse Bagley's procedural default.

A petitioner may overcome procedural default and obtain federal merits review if he can "demonstrate cause and prejudice for the default or demonstrate that failure to review the claims will result in a fundamental miscarriage of justice." *Edwards v. Johnson*, No. 2:10cv339, 2010 WL 5825427, at *3 (E.D. Va. Dec. 15, 2010) (citing *Coleman*, 501 U.S. at 750, and *Savino v. Murray*, 82 F.3d 593, 602 (4th Cir. 1996)). To show cause to excuse a procedural default, a petitioner must establish that some "objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see Coleman*, 501 U.S. at 753 (noting that a factor external to the defense is one that "cannot fairly be attributed to" the prisoner).[1] Bagley has not alleged cause for his failure to raise his claims contained in grounds one and two on direct appeal. Nor has he alleged cause for his failure to raise his claim that there was insufficient evidence to prove force in his renewed motion to strike.

### 4. Bagley has not provided evidence of actual innocence.

The Supreme Court has recognized that actual innocence, if proved, serves as "a gateway through which a habeas petitioner may pass" to have his procedurally defaulted claims addressed on the merits. *Finch v. McKoy*, 914 F.3d 292, 294 (4th Cir. 2019); *Schlup v. Delo*, 513 U.S. 298, 314–316 (1995). "This rule, or fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the

---

[1] The Supreme Court in *Martinez* ruled that the ineffective assistance of counsel, or the lack of counsel, during an initial review collateral proceeding may constitute justifiable cause for procedural default in certain circumstances. *Martinez v. Ryan*, 566 U.S. 1, 9, 14, 17 (2012); *see also Davila v. Davis*, 137 S. Ct. 2058, 2065–66 (2017) (noting that the narrow exception carved out by *Martinez* allows the ineffective assistance of postconviction counsel to constitute cause to surmount default on a single claim—the ineffective assistance of trial counsel—in states that only allow such claims to be brought in state postconviction proceedings). Because Bagley's ineffective assistance of counsel claims are not procedurally defaulted, the exception identified in *Martinez* has no application to Bagley's federal petition.

incarceration of innocent persons." *Herrera v. Collins,* 506 U.S. 390, 404 (1993) (citation omitted). It "seeks to balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case." *Schlup,* 513 U.S. at 324.

To establish actual innocence predicated upon constitutional error, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623 (1998). The exception requires "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup,* 513 U.S. at 324. If a petitioner provides the court with reliable, newly discovered evidence of his actual innocence, then the court weighs the new evidence in light of the previous admissible and inadmissible evidence and makes a "probabilistic determination about what reasonable, properly instructed jurors would do." *Id.* at 329.

The *Schlup* standard is an exceedingly high burden to satisfy and only permits review in "extraordinary" cases. *House v. Bell,* 547 U.S. 518, 538 (2006); *see also Schlup,* 513 U.S. at 327– 29. A petitioner's actual innocence claim "does not by itself provide a basis for relief." *Teleguz v. Pearson,* 689 F.3d 322, 328 (4th Cir. 2012) (quotation marks omitted); *see Herrera,* 506 U.S. at 400 (noting that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the course of the underlying state criminal proceeding"). Instead, a petitioner's "claim of innocence is . . . a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Schlup,* 513 U.S. at 315 (quotation marks

omitted); *see also Teleguz*, 689 F.3d at 329.

Bagley argues that "[i]t is clear and evident that Petitioner is only guilty of statutory rape," implying that he is innocent of all other charges. ECF No. 1, at 45 (citing ECF No. 18-14, at 5 and contending that because the Supreme Court of Virginia reviewed nude pictures of J., which she purportedly sent to Bagley, the court should have found that the relationship was consensual, thus absolving Bagley of liability for all convictions besides statutory rape). Bagley suggests that the Supreme Court of Virginia erred because "explicit pictures and messages sent by the alleged victim to [Bagley]; [] clearly and unambiguously contradicts the alleged victim's allegations." *Id.* However, the Supreme Court of Virginia noted that Bagley's trial counsel "admitted numerous pictures materially identical" to the pictures Bagley now claims should be the basis for proving that his "relationship" was consensual. ECF No. 18-14, at 5; Trial Tr. at 99–100. Bagley's failure to provide "new, reliable evidence . . . that was not presented at trial" is insufficient to satisfy the high standard to pass through the actual innocence gateway. *See Schlup,* 513 U.S. at 324. Thus, grounds 1, 2, and 3(a) should be **DENIED** as procedurally barred.

**B.     Section 2254 provides the standard of review for habeas claims adjudicated in state court.**

When a claim has been properly exhausted and adjudicated on the merits in state court, this Court assesses the state court adjudication pursuant to 28 U.S.C. § 2254(d), rather than reviewing the merits of such a claim *de novo.* Section 2254(d) provides that a federal court may not grant relief on any claim that was adjudicated on its merits in state court, unless that adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

12

28 U.S.C. § 2254(d)(1)–(2).

A state court decision is "contrary to" clearly established federal law when a state court applies a rule different from the governing law articulated by the United States Supreme Court or arrives at a conclusion opposite that of the Supreme Court on materially indistinguishable facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 404–06 (2000)). A state court decision constitutes an "unreasonable application" of federal law when the court identifies the correct governing legal principle from the decisions of the Supreme Court, but unreasonably applies that principle to the facts of the case. *Williams*, 529 U.S. at 413 (O'Connor, J., concurring); *see Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (stating that the "application of clearly established law must be objectively unreasonable," rather than simply "incorrect or erroneous"). Stated differently, a "prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

"For a state court's factual determination to be unreasonable under § 2254(d)(2), it must be more than merely incorrect or erroneous. It must be sufficiently against the weight of the evidence that it is objectively unreasonable." *Winston v. Kelly*, 592 F.3d 535, 554 (4th Cir. 2010) (internal citation omitted). The "federal court must conclude not only that the state court's determination was wrong, but that it was *unreasonable* in light of the evidence presented, that is, it is not 'debatable among jurists of reason.'" *Crockett v. Clarke*, 35 F.4th 231, 241 (4th Cir. 2022) (quoting *Merzbacher v. Shearin*, 706 F.3d 356, 368 (4th Cir. 2013)).

### 1.   Bagley has not established that he is entitled to habeas relief on the sufficiency of the evidence claim raised in ground 3(b).

In ground 3(b), Bagley asserts that the evidence presented during his trial was insufficient

to establish his guilt because J.'s testimony was inconsistent and contradictory. ECF No. 1, at 47 (incorporating by reference claim C of his state habeas petition); *see id.* at 16–19.

Essential to the Fourteenth Amendment right to due process is that "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia*, 443 U.S. 307, 316 (1979). Pursuant to *Jackson*, a federal court reviewing a habeas petition asserting insufficient evidence asks "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319; *see also Coleman v. Johnson*, 566 U.S. 650, 651 (2012).

Ultimately, habeas petitions that raise sufficiency of the evidence claims "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, 'it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.'" *Coleman v. Johnson*, 566 U.S. at 651 (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam)). "And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable.'" *Id.* (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)). The reviewing federal court, "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear on the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326.

14

Addressing Bagley's sufficiency of the evidence claim raised on direct appeal, the Court

of Appeals of Virginia held:

> Bagley also contends that the evidence was insufficient to support all of his
> convictions because J.'s testimony was inherently incredible. Unlike his argument
> pertaining to the evidence establishing the use of "force, threat, or intimidation,"
> Bagley presented this argument in both his initial and renewed motions to strike.
> Bagley argues that J.'s testimony was uncorroborated by additional evidence. He
> also emphasizes the inconsistency between J.'s testimony at trial and her initial
> report to the police, and notes that she failed to provide definitive dates of when the
> sexual abuse at issue occurred.

> "When the sufficiency of the evidence is challenged on appeal, the judgment of the
> trial court will not be set aside unless it appears from the evidence that the judgment
> is 'plainly wrong or without evidence to support it.'" *Wilson v. Commonwealth*, 46
> Va. App. 73, 87, 615 S.E.2d 500, 507 (2005) (quoting *Martin v. Commonwealth*, 4
> Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)). "[G]reat deference must be given
> to the factfinder who, having seen and heard the witnesses, assesses their credibility
> and weighs their testimony." *Id.* (quoting *Walton v. Commonwealth*, 255 Va. 422,
> 426, 497 S.E.2d 869, 871 (1988)). "It is well established that it is for triers of facts
> to resolve conflicting accounts within a witness' testimony." *Smith v.
> Commonwealth*, 56 Va. App. 711, 719, 697 S.E.2d 14, 18 (2010). "[T]he
> conclusions of the fact finders on issues of witness credibility may be disturbed on
> appeal only when we find that the witness' testimony was 'inherently incredible, or
> so contrary to human experience as to render it unworthy of belief.'" *Ragsdale v.
> Commonwealth*, 38 Va. App. 421, 429, 565 S.E.2d 331, 335 (2002) (quoting *Ashby
> v. Commonwealth*, 33 Va. App. 540, 548, 535 S.E.2d 182, 187 (2000)).

> We acknowledge that certain circumstances in this case may have challenged J.'s
> credibility. Despite these circumstances, J.'s testimony was not inherently
> unbelievable. The jury heard J.'s testimony, observed her demeanor as she
> testified, and concluded that her testimony was credible. Ample evidence
> supported this decision.

> Contrary to Bagley's argument on appeal, J.'s testimony was corroborated by
> additional evidence. J. gave birth to two of Bagley's children, confirming that she
> and Bagley had a sexual relationship that began when she was, at most, seventeen
> years old. Moreover, Bagley told J.'s friend that he was in love with J., that he and
> J. had two children together, and that they had been in a "relationship" since J. was
> eleven years old.

> Although some of J.'s actions called her credibility into question, "this Court has
> clearly recognized that a 'victim's youth, fright and embarrassment [may] provide[]
> the jury with an acceptable explanation' for a victim's otherwise unexplainable
> statements or actions." *Smith*, 56 Va. App. at 719, 697 S.E.2d at 18 (quoting *Corvin*

15

*v. Commonwealth*, 13 Va. App. 296, 299, 411 S.E.2d 235, 237 (1991)).  J. testified that Bagley had manipulated her to the point "where [she] did anything he wanted to please him."  She also explained that she did not report Bagley's sexual abuse for many years because she feared that doing so would have destroyed her family. J. acknowledged that she lived with Bagley after she reported the sexual abuse to the police, but explained that she did so in order to secure a home for her children and prevent Bagley from obtaining sole custody of them.  The jury accepted J.'s explanations of her actions, and its decision to do so was not plainly wrong.

While Bagley argues that J.'s testimony was incredible due to her inability to recall the specific dates of the sexual abuse, Virginia courts have consistently held that time is not of the essence in cases involving the sexual abuse of a child.  *See Waitt v. Commonwealth*, 207 Va. 230, 235, 148 S.E.2d 805, 808 (1966); *Marlowe v. Commonwealth*, 2 Va. App. 619, 622, 347 S.E.2d 167, 169 (1986).  J. testified that Bagley initially abused her when she was in the sixth grade and that he had sexual intercourse with her for the first time when she was in the eighth grade.  J. also testified that Bagley regularly abused her over a nine-year period with increasing frequency.  The jury weighed J.'s inability to recall the exact dates of the sexual abuse in light of the circumstances of the case, and concluded that this inability did not render her testimony incredible.

We will not disturb the jury's credibility determination in this case.  J.'s testimony was not inherently incredible or unworthy of belief.  *See Ragsdale*, 38 Va. App. at 429, 565 S.E.2d at 335.  Considered as a whole, J.'s testimony was competent, credible, and sufficient to prove Bagley's guilt beyond a reasonable doubt.

ECF No. 18-7, at 7–9.

Guided by the standard established in *Jackson*, the Court has reviewed the record, including the trial transcript, to assess the reasonableness of the state court decision.  *See* Trial Tr.  On review, the Court finds that the state court's decision was reasonable, as the evidence in the record revealed:  (1) Bagley first engaged in sexual activity with J. when she was in the sixth grade, although they did not have intercourse at that time (*Id.* at 82–84, 89–90); (2) Bagley and J. first had sexual intercourse around the time that J. was in the eighth grade (*Id.* at 84); (3) Bagley and J. continued to have sexual intercourse over the years, eventually as frequently as about every two days (*Id.* at 85–87); (4) around the time that Bagley first had intercourse with J., J. testified that he also placed inanimate sexual objects inside her (*Id.* at 85–86); (5) at some point later on, Bagley

16

also had anal and oral sex with J. (*Id.* at 86); (6) J. never consented to having any form of sexual activity with Bagley, although she never said no (*Id.* at 88–89); (7) J. became pregnant with Bagley's first child when she was seventeen (*Id.* at 92); (8) J. became pregnant with Bagley's second child shortly thereafter, sometime in 2010 (*Id.* at 93); (9) J. filed for a protective order against Bagley in August 2013 (*Id.* at 99); (10) J. continued to have contact with Bagley even after obtaining the protective order, including sending him pornographic pictures of herself (*Id.* at 100); (11) J. lived with Bagley and her two kids for a period of time after obtaining the protective order (*Id.* at 102); (12) J. testified that she lived with Bagley so that her kids would be taken care of, and because she was afraid that Bagley would gain custody of her children and that he would do the same thing to her daughter that he did to J. (*Id.* at 102–04); (13) J. testified that Bagley had manipulated her to the point that she would do anything he wanted (*Id.* at 104); and (14) J.'s friend since 2005 testified that she had a conversation over the phone with Bagley on August 14, 2013, during which he stated that he had two kids with J., that the two of them had been in a relationship since she was 11 years old, and that Bagley thought they were in love (*Id.* at 59–60).

Consistent with *Jackson*, the Court of Appeals of Virginia properly viewed the evidence in the light most favorable to, and resolved conflicting inferences in favor of, the prosecution. 433 U.S. at 319; *see also* ECF No. 18-7, at 7–8. The state court did not unreasonably apply *Jackson* in determining a rational trier of fact could find the evidence presented at trial sufficient to show beyond a reasonable doubt that Bagley was guilty of rape, forcible sodomy, two counts of animate object sexual penetration, carnal knowledge of a minor, and three counts of taking indecent liberties with a minor. ECF No. 18-7, at 1, 7–9. Likewise, given the evidence described above, nor was the state court's factual determination objectively unreasonable. Bagley is therefore not entitled to habeas relief on his due process claim of insufficient evidence, and ground 3(b) should

be **DENIED**.

> **2.** **The Supreme Court of Virginia's denial of Bagley's ineffective assistance of counsel claims was not based on an unreasonable application of federal law or an unreasonable factual determination.**

In grounds 4(a)–(c), Bagley raises three ineffective assistance of counsel claims.  ECF No. 1, at 48–49.  Bagley raised these claims in his habeas petition to the Supreme Court of Virginia. *Id.* at 17–38.  The Supreme Court of Virginia denied and dismissed grounds 4(a)–(c).  ECF No. 18-14, at 1, 4–11.

The applicable standard for determining if counsel was ineffective is set forth in *Strickland v. Washington*, and requires a petitioner to show that defense counsel provided assistance that (1) fell below an objective standard of reasonableness, and (2) prejudiced petitioner as a result.  466 U.S. 668, 687–700 (1984).  To establish that counsel's performance fell below an objective standard of reasonableness, Bagley must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* at 687.  In doing so, Bagley must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'"  *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689).

To establish prejudice, Bagley must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  This requires Bagley to establish "probability sufficient to undermine confidence in the outcome," rather than a mere showing that "the errors had some conceivable effect on the outcome of the proceeding."  *Id.* at 693–94.  A federal habeas court need not address both performance and prejudice if the petitioner makes an insufficient showing on either prong.  *Id.* at 697.

Because Bagley presents these claims in a section 2254 petition, he must show that the state court's dismissal of his ineffective assistance of counsel claims was contrary to, or an unreasonable application of, the *Strickland* standard, or was predicated upon an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). To review a claim of ineffective assistance of counsel, the Court must apply "a doubly deferential standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (citation and quotation marks omitted). "This double-deference standard effectively cabins our review to a determination of whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Crockett*, 35 F.4th at 242 (quoting *Morva v. Zook*, 821 F.3d 517, 528 (4th Cir. 2016)).

> a. **Bagley has not established that he is entitled to habeas relief on ground 4(a), which alleges ineffective assistance of counsel due to counsel's failure to "challenge the indictments as multiciplitous, and ensure that those presented were first approved by a grand jury, and/or move for the dismissal thereof under these ground[s] [so] that his objection would preserve these claims for future review."**

In ground 4(a), Bagley asserts he was denied effective assistance of counsel due to the failure of his trial counsel to challenge the indictments as "multiciplitous." ECF No. 1, at 48. Looking back to Bagley's state court habeas petition, which Bagley incorporates by reference, he argues that "[w]hen the law was written . . . it was never intended for any person to be charged with several indictments that practically describe the same thing, in simply different words." *Id.* at 23. Bagley further argues in support of his claim, "anyone can clearly see that all the aforementioned charges describe only one thing," and that "if indictments charge multiple offenses, that congress intended to be separate crimes, a defendant can be made to answer for each offense separately." *Id.* at 24, 26 (citing *U.S. v. Chandia*, 514 F.3d 365, 372 (4th Cir. 2008)).

Addressing Bagley's arguments, the state court ruled:

[T]his claim satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. Petitioner fails to demonstrate Tinnell unreasonably neglected a potentially meritorious objection to petitioner's indictments. To the extent petitioner complains of being charged with multiple counts of indecent liberties and animate object sexual penetration, those indictments were not "multiplicitous" or potentially violative of double jeopardy because the record, including the indictments, demonstrates each indictment for indecent liberties alleged a unique date range for each offense. The same is true for each of petitioner's indictments for animate object sexual penetration. *See United States v. Conley*, 291 F.3d 464, 470–71 (7th Cir. 2002) (two indictments for possessing a specific shotgun [were] not multiplicative where they alleged two different dates of possession, thus requiring the prosecution to prove "possession of the shotgun on two separate dates, as two distinct courses of conduct"). Further, petitioner has not specified an instance where any two of his charges rested on proof of the same facts. *See United States v. Reedy*, 304 F.3d 358, 363 (5th Cir. 2002) ("Where overlapping statutory provisions create a risk of multiplicity, the test for determining whether the same act or transaction constitutes two offenses or only one is whether conviction under each statutory provision requires proof of an additional fact which the other does not.") (internal quotations marks and brackets omitted). Instead, petitioner merely complains that all his offenses alleged some variety of sexual abuse petitioner perpetrated against J.[]

Further, petitioner does not attempt to describe how Tinnell's raising any objection to petitioner's indictments might have materially benefitted petitioner. Petitioner appears to assume some of his indictments would have been dismissed but he does not specify which ones or adequately explain why. In any event, absent good cause for raising the issue later, Tinnell would have had to raise any double jeopardy objection to petitioner's indictments no later than seven days before petitioner's trial. Code § 19.2-266.2(A)–(B). Considering that the record, including petitioner's indictments and the trial transcript, demonstrates petitioner's abuse of J.[] began when she was eleven years' old, spanned seven years, and included a variety of sexual activity on a frequent basis, it is at best unclear whether the Commonwealth could have amended petitioner's indictments to cure any potential double jeopardy or multiplicity concerns. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In another portion of claim (D), petitioner contends he was denied the effective assistance of counsel because Tinnell did not ensure petitioner's indictments were presented to a grand jury and seek to have them dismissed if they were not.

The Court holds this claim satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. The record, including

> petitioner's indictments and amended indictments, demonstrates the grand jury indicted petitioner for all eight of his charges on September 16, 2014. Each of those indictments is signed "A True Bill" by the grand jury foreman and notes that it was sworn in open court. Petitioner has described no circumstance that should have led Tinnell to question the validity of petitioner's indictments. Accordingly, because petitioner has not shown that Tinnell neglected a potentially meritorious objection to petitioner's indictments, he has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

ECF No. 18-14, at 6–7.

Indictments charging a single offense in different counts are multiplicitous. *United States v. Ansaldi*, 372 F.3d 118, 125 (2d Cir. 2004). Since being convicted of multiplicitous counts would constitute a double jeopardy violation, courts have analyzed multiplicity and double jeopardy in a nearly identical fashion. *See Whalen v. United States*, 445 U.S. 684, 690–91 (1980). As noted by the state court, the indictments that list multiple counts of indecent liberties and animate object sexual penetration each alleged a unique date range, thus not making them multiplicitous or violative of double jeopardy. *Id.* at 6; *Blockburger v. United States*, 284 U.S. 299, 304 (1932) ("[T]he test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."). Moreover, Bagley has not alleged or specified an instance where two charges against him rest on the exact same facts, but rather alleges that the indictments "practically describe the same thing, in simply different words." ECF No. 1, at 23. Thus, the state court correctly concluded that Bagley failed to demonstrate that his counsel "unreasonably neglected a potentially meritorious objection to petitioner's indictments." ECF No. 18-14, at 6; *see Oken v. Corcoran*, 220 F.3d 259, 269–70 (4th Cir. 2000) (ruling that counsel is not ineffective for failing to make an argument or raise an objection that would be futile).

Further, with respect to Bagley's argument that counsel should have ensured that the indictments were first approved by a grand jury and moved for the dismissal of the indictments so

that his objection would be preserved, the state court correctly found that this claim does not satisfy *Strickland*. As the state court noted, the record reflects that a grand jury indicted Bagley on eight charges on September 16, 2014, each signed "A True Bill" by the grand jury foreperson. ECF No. 18-14, at 7; Va. Sup. Ct. Hab. R. at 283–90, 358–62.[2]  Accordingly, Bagley's counsel had no reason to question the validity of the indictments against Bagley.  Nor has Bagley provided a potentially meritorious objection to the indictments.

The Supreme Court of Virginia did not unreasonably apply federal law.  Nor was the ruling based on an unreasonable determination of the facts.  Bagley is therefore not entitled to habeas relief on ground 4(a) and it should be **DENIED**.

> **b.**     **Bagley has not established that he is entitled to habeas relief on ground 4(b), which alleges ineffective assistance due to counsel's failure to "challenge the overall evidence as insufficient and not requesting evidence beneficial to the defense to be used."**

In ground 4(b), Bagley asserts that he was denied effective assistance of counsel due to counsel's failure to challenge the overall evidence as insufficient. ECF No. 1, at 48. Bagley further argues that counsel was ineffective by not requesting evidence beneficial to the defense, "such as pictures and text messages that would prove the alleged victim's allegations to be lies." *Id.*  Also, Bagley argues that the only other evidence was J.'s statements, which he says were "clearly insufficient, and contradictive." *Id.*

As to the argument that trial counsel should have requested evidence beneficial to the defense, the state court correctly ruled that Bagley's claim failed to meet either the performance or prejudice prong of *Strickland*.  The state court found:

> To the extent petitioner faults Tinnell for not introducing additional nude pictures J.[] sent to petitioner, petitioner has not proffered the pictures he claims Tinnell

---

[2] "Va. Sup. Ct. Hab. R." refers to the record in *Bagley v. Cabell*, Record No. 220278, received from the Supreme Court of Virginia, consecutively paginated from 1 through 911.

should have introduced, attempted to describe why Tinnell should have deemed additional pictures necessary, or attempted to explain how those pictures might have impacted the jury's verdict. As explained above, Tinnell introduced numerous sexually explicit, nude pictures that J.[] acknowledged sending petitioner.

Similarly, to the extent petitioner faults Tinnell for not introducing "sexual" messages petitioner and J.[] exchanged, petitioner has not proffered the messages, attempted to describe why Tinnell should have deemed the messages beneficial to petitioner's defense, or attempted to explain how those messages might have impacted the jury's verdict. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

ECF No. 18-14, at 9.

The state court committed no error in addressing this claim. As the state court noted, Bagley's counsel presented multiple pictures and text messages at trial in Bagley's defense. Trial Tr. at 99–100. Insofar as Bagley contends that counsel should have requested or produced additional photos or text messages, Bagley has failed to proffer this evidence, explain what it might show, and demonstrate how it might have affected the outcome of his case. *See Vandross v. Stirling*, 986 F.3d 442, 452 (4th Cir. 2021) (ruling that a petitioner must specifically proffer what the evidence would have shown, or what a witness would have testified to, in order to sufficiently claim ineffective assistance of counsel due to counsel's lack of presenting certain evidence or calling certain witnesses). Accordingly, this portion of Bagley's ground 4(b) should be **DENIED**.

Regarding Bagley's argument that counsel should have challenged the overall evidence as insufficient because the only evidence was J.'s statements, which were insufficient and contradictive, the state court also correctly rejected this argument as without merit. The state court ruled:

The Court holds this claim satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. The record, including the trial transcript, demonstrates Tinnell moved to strike petitioner's charges at the close of the Commonwealth's evidence and at the close of all the evidence. Tinnell then

23

argued to the jury that petitioner should be acquitted. Petitioner does not allege what additional argument Tinnell should have offered regarding the sufficiency of the evidence. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

ECF No. 18-14, at 8.

Bagley is not entitled to habeas relief on this argument. Counsel's motions to strike the evidence and subsequent argument to the jury for Bagley's acquittal fell "within the wide range of reasonable professional assistance." *Strickland*, 266 U.S. at 688. The state court reasonably determined the facts and reasonably applied federal law in concluding that Bagley did not establish deficient performance or prejudice with respect to this claim. Thus, Bagley is not entitled to relief on ground 4(b) alleging ineffective assistance due to counsel's failure to challenge the overall insufficiency of the evidence and ground 4(b) should be **DENIED**.

> **c.** **Bagley has not established that he is entitled to relief on ground 4(c), which alleges ineffective assistance due to counsel's failure to advise him "about the existing plea [] offer and instead rejected it without [Bagley's] knowledge or consent."**

In ground 4(c), Bagley contends that counsel failed to advise him of an existing plea offer and rejected it without his consent. ECF No. 1, at 49. In support of this argument, Bagley draws the Court's attention to an affidavit filed by Robert Bauer, an attorney working in the Office of the Commonwealth's Attorney for Prince Edward County who was assigned to prosecute Bagley. *Id.* Bagley states that the "Attorney General's office actually found a note about [the plea offer] on counsel's file of the case." *Id.* Additionally, Bagley argues that his counsel did not allow him to testify and did not ask questions that Bagley knew would reveal the truth. *Id.*

First addressing Bagley's argument that counsel failed to advise him of the plea offer and instead rejected it without his knowledge or consent, the Court notes that this argument is slightly modified from that presented in Bagley's petition to the Supreme Court of Virginia. In his state

petition, Bagley specified that his counsel failed to advise him of the "existing 10 year plea [offer]

and reject[ed] it without [Bagley's] consent," whereas in his federal petition Bagley states that

counsel failed to advise him of "the existing plea [] offer." *See id.* at 36, 49. Insofar as Bagley is

now arguing that counsel did not advise him of any plea offer, rather than the previously alleged

10-year plea offer, Bagley has failed to sufficiently exhaust his argument in state court, as this

constitutes a change of operative fact relevant to Bagley's claim. *See Winston v. Kelly*, 592 F.3d

535, 549 (4th Cir. 2010) ("The exhaustion requirement applies as much to the development of facts

material to a petitioner's claims as it does to the legal principles underlying those claims."); *see*

*also Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997) ("[B]oth the operative facts and the

controlling legal principles must be presented to the state court" for a claim to be exhausted.).

Accordingly, Bagley's argument in his federal petition is limited to the claim made in state court:

that counsel failed to advise him of the existing 10-year plea offer and rejected it without his

consent. ECF No. 1, at 36.

     The Supreme Court of Virginia addressed this argument, stating:

> The Court holds this claim satisfies neither the "performance" nor the "prejudice"
> prong of the two-part test enunciated in *Strickland.* Petitioner does not allege when
> or under what circumstances he learned of the alleged 10-year plea offer. Nor does
> he describe the terms of that offer or describe how he ascertained that Tinnell
> rejected it. Further, the record, including an affidavit from the Assistant
> Commonwealth's Attorney who prosecuted petitioner, Robert Bauer, demonstrates
> that, in May 2014, Bauer offered to allow petitioner to plead guilty to a single count
> of animate object sexual penetration and receive a sentence of fifty years'
> imprisonment with thirty years suspended. Several months later, Bauer offered
> plea agreements that would have resulted in petitioner serving twenty-five, twenty-
> three, or twenty years' active incarceration. Bauer also recalls that, in June 2015,
> he told a colleague that he might be willing to allow petitioner to plead guilty in
> exchange for his serving fifteen years' active incarceration. At the time, Bauer did
> not believe petitioner would accept such an offer. Further, Bauer believes Tinnell
> approached him regarding whether Bauer would accept a plea agreement under
> which petitioner would only serve 10 years' active incarceration. Bauer does not
> remember ever making Tinnell a plea offer that would have allowed petitioner to
> serve only 10 years' active incarceration but Bauer does remember consistently

thinking that he was not willing to make an offer for such "little time." Considering Bauer's affidavit and the paucity of petitioner's factual allegations, he has failed to carry his burden of demonstrating a 10-year plea offer in fact existed or that Tinnell rejected it unilaterally.

Further, petitioner has not alleged or attempted to explain why he would have accepted the purported offer. This alone is fatal to petitioner's claim. *See Walters v. Martin*, 18 F.4th 434, 442 (4th Cir. 2021) (to show prejudice in the context of a claim that counsel rendered deficient performance in connection with plea negotiations, a petitioner must demonstrate, among other things, a reasonable probability that, but for counsel's deficient performance, he would have accepted the offer). Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

ECF No. 18-14, at 9–10.

The state court committed no error in addressing this claim. While counsel has a duty "to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused," and failure to do so may constitute deficient performance, the state court correctly concluded that Bagley failed to demonstrate a 10-year plea was ever offered to him. *See Missouri v. Frye*, 566 U.S. 134, 145, 147 (2012). As the state court explained, the prosecutor's affidavit indicated that the best plea offers made to Bagley were for 50 years of incarceration with 30 years suspended for a single conviction for Object Sexual Penetration, and later for 20 years to a single count of rape if he wanted to plead outright instead of setting the case for trial.[3] Va. Sup. Ct. Hab. R. at 899 ("Bauer's Aff."); *see* ECF No. 18-14, at 9. Bauer's affidavit further indicates that he probably would have offered Bagley a plea deal for as little as 15 years incarceration, but there is no suggestion that such an offer was ever formally made, and Bauer stated "'there's no way [Bagley would] agree to it.'" Bauer's Aff. Thus, the state court did not err in finding that

---

[3] The respondent proffered that "[u]pon information and belief, Mr. Tinnell passed away on February 12, 2018." Br. in Supp. of Mot. to Dismiss and Rule 5 Answer, ECF No. 18, n.1 ("Resp.'s Br.").

Bagley failed to show that counsel ever failed to communicate a plea offer of 10-years incarceration, because the record indicates that such an offer never existed.

Moreover, to show prejudice under *Strickland* with regard to plea bargaining, Bagley must demonstrate "a reasonable probability [he] would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel," and that "the plea would have been entered without the prosecution canceling it or the state court refusing to accept it." *Frye*, 566 U.S. at 147. The state court accurately concluded that Bagley did not meet his burden on this front, because he has proffered no facts to suggest that he would have accepted a plea offer of 20 years, or an offer of 15 years, had a formal offer been made.

In another portion of ground 4(c), Bagley alleges that his counsel was deficient by "not allowing Petitioner to testify." ECF No. 1, at 49. The state court rejected this claim, ruling:

> The Court holds this claim fails to satisfy the "prejudice" prong of the two-part test enunciated in *Strickland*. Petitioner does not proffer what his testimony would have been had he taken the stand nor does he allege or attempt to explain how his testimony might have impacted the jury's verdict with respect to any of his numerous charges. *See Smith v. Dickaut*, 836 F.3d 97, 106–07 (1st Cir. 2016) (explaining that, even if a habeas petitioner had shown his trial counsel's advice regarding whether he should testify amounted to deficient performance, his claim of ineffective assistance failed because he had not shown a reasonable probability that his testimony would have affected the outcome of his trial). Thus, petitioner has failed to demonstrate that, but for counsel's alleged error, the result of the proceeding would have been different.

ECF No. 18-14, at 10.

The state court's holding is based on a reasonable determination of the facts, as well as the principle that it is difficult to determine what the missing testimony would have been if Bagley were to have testified. *See Bassette v. Thompson*, 915 F.2d 932, 940–41 (4th Cir. 1990) (holding that an individual cannot establish ineffective assistance under *Strickland* merely by claiming his counsel should have called additional witnesses to testify without also advising what the testimony

would have revealed or what the witnesses might have said).  Absent details from Bagley about what he would have testified to, the state court reasonably concluded that he did not meet the standard needed to prove deficiency or prejudice.  So, the state court's rejection of this argument was based on a reasonable application of the facts and was not contrary to federal law, or an unreasonable application thereof.

Bagley further argues under ground 4(c) that counsel failed to ask "questions that Petitioner knew would reveal the truth." ECF No. 1, at 49.  Rejecting this argument, the Supreme Court of Virginia held that "[p]etitioner has not described what questions Tinnell should have asked of which witnesses, what their answers to those questions might have been, or how those answers might have affected the jury's verdict." ECF No. 18-14, at 11.  The state court's judgment was not contrary to or an unreasonable application of *Strickland*, as Bagley failed to proffer any additional information about the questions that he wanted counsel to ask on his behalf, or how they would have "reveal[ed] the truth."

Therefore, Bagley is not entitled to habeas relief on ground 4(c) asserting ineffective assistance of counsel and ground 4(c) should be **DENIED**.

> ### d.   Bagley is not entitled to habeas relief pursuant to his claim that counsel's cumulative errors constituted deficient performance.

Bagley asserts he was denied effective assistance of counsel due to counsel's cumulative errors outlined in grounds 4(a) through 4(c). ECF No. 1, at 48–49 ("All things combined proves both prongs of the *Strickland* test showing that if it were not for counsel's deficiency the outcome of the trial would have been different."). "Pursuant to the cumulative error doctrine, the cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error." *United States v. Basham*, 561 F.3d 302, 330 (4th Cir. 2009) (internal quotations and citations omitted); *see also United States v. Martinez*, 277 F.3d 517,

532 (4th Cir. 2002).  To grant Bagley relief for cumulative error, the errors must "so fatally infect the trial" that the trial was fundamentally unfair.  *Basham*, 561 F.3d at 330 (quoting *United States v. Bell*, 367 F.3d 452, 471 (5th Cir. 2004)).  However, proper "cumulative-error analysis evaluates only the effect of matters actually determined to be constitutional error, not the cumulative effect of all of counsel's actions deemed deficient." *Fisher v. Angelone*, 163 F.3d 835, 852 n.9 (4th Cir. 1998).  For cumulative error to apply then, a court must first conclude that constitutional errors did in fact occur, and while harmless individually, the aggregate effect of the errors was to effectuate constitutional harm.  *Id.*

The Court does not find a constitutional error occurred during Bagley's conviction or sentence, and the cumulative error analysis does not apply.  *See Turner v. Clarke*, No. 2:12cv680, 2013 WL 3967523, at *9 (E.D. Va. July 30, 2013); *Ault v. Waid*, 654 F. Supp. 2d 465, 498–99 (N.D.W. Va. 2009), *aff'd,* 414 F. App'x 546 (4th Cir. 2011).  Bagley is not entitled to habeas relief on his claim that the accumulation of counsel's alleged errors violated his due process rights and ground 4(d) should be **DENIED**.

### 3. Bagley is not entitled to habeas relief on ground five, claiming that the Supreme Court of Virginia's ruling is "both erroneous and contradictive."

In ground 5, Bagley contends that the state court's ruling on his state habeas petition is "both erroneous and contradictive." ECF No. 1, at 49.  The Court may not consider a challenge to an error committed during Virginia's state habeas corpus proceedings.  A state prisoner can seek relief from a state court judgment under 28 U.S.C. § 2254 if he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  The United States Constitution does not grant a state prisoner the right to post-conviction proceedings in state court. *Lawrence v. Branker*, 517 F.3d 700, 717 (4th Cir. 2008) (citing *Lackawanna Cnty. Dist. Att'y v. Coss*, 532 U.S. 394, 402 (2001)).  Accordingly, claims of error in a state post-conviction

29

proceeding cannot serve as a basis for federal habeas corpus relief. *Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988); *Lawrence*, 517 F.3d at 717 ("[E]ven where there is some error in state post-conviction proceedings, a petitioner is not entitled to federal habeas relief because the assignment of error relating to those post-conviction proceedings represents an attack on a proceeding collateral to the detention and not to the detention itself."). The Court finds that Bagley's final argument under ground 5, which challenges the decision of the Supreme Court of Virginia addressing Bagley's state habeas petition, provides no basis for federal habeas corpus relief. Accordingly, ground 5 should be **DENIED**.

### III.    RECOMMENDATION

The Court **RECOMMENDS** that respondent's motion to dismiss (ECF No. 16) be **GRANTED**, and the petition for writ of habeas corpus (ECF No. 1) be **DENIED and DISMISSED WITH PREJUDICE**.

### IV.    REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.      Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.      A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

_____

Robert J. Krask
United States Magistrate Judge

Norfolk, Virginia
March 4, 2024